**Teresa B. LETELLIER**

v.

**Steven G. LETELLIER.**

Supreme Court of Tennessee,
at Nashville.

March 27, 2001.

Andrea McKellar and Gregory Dye Smith, Nashville, TN, for defendant/appellant, Steven G. LeTellier.

Jon Steven Jablonski, Nashville, TN, for plaintiff/appellee, Teresa B. LeTellier.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Stuart F. Wilson–Patton, for amicus curiae, Tennessee Department of Human Services.

## OPINION

HOLDER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, BIRCH, and BARKER, JJ., joined.

We granted this appeal to address the following issues regarding the modification of out-of-state support orders: 1) the interrelation of § 36–5–2201, § 36–5–2202, and § 36–5–2611(a) of Tennessee's Uniform Interstate Family Support Act ("UIFSA") and the extent to which those statutes confer jurisdiction upon Tennessee courts to modify out-of-state support orders; and 2) the preemption of Tennessee's UIFSA by the jurisdictional provisions of the Federal Full Faith and Credit for Child Support Orders Act ("FFCCSOA"). We hold that § 36–5–2202 is not applicable to actions to modify out-of-state support orders. Section 36–5–2202 is applicable, however, to actions in which long-arm personal jurisdiction is acquired via § 35–5–2201 to establish, enforce, or modify Tennessee support orders. Tennessee courts have subject matter jurisdiction to modify support orders issued by other states only when § 36–5–2611(a) of UIFSA has been satisfied. We further hold that the jurisdictional provisions of the Federal FFCCSOA do not conflict with UIFSA. Accordingly, UIFSA is not preempted by federal law.

## BACKGROUND

In May 1989, the Superior Court of the District of Columbia entered an order adjudging Steven G. LeTellier to be the father of Teresa B. LeTellier's child, Nicholas. The court awarded custody of Nicholas to Ms. LeTellier and ordered Mr. LeTellier to pay child support. Ms. LeTellier later moved with Nicholas to Tennessee, and Mr. LeTellier moved to Virginia.

In September 1998, Ms. LeTellier filed petitions in the Juvenile Court of Davidson County, Tennessee, seeking (1) to enroll the District of Columbia order, and (2) to modify the child support award. Mr. LeTellier moved to dismiss the petition to modify. A juvenile court referee granted the motion to dismiss on grounds that the Tennessee court lacked subject matter jurisdiction to modify the support order. The juvenile court affirmed the referee's findings but ordered that the case be transferred to the appropriate court in Virginia, where Mr. LeTellier resides.

The Court of Appeals reversed the trial court's holding. The court found that the jurisdictional provisions of Tennessee's Uniform Interstate Family Support Act

conflict with the Federal Full Faith and Credit for Child Support Orders Act. It held that FFCCSOA preempted UIFSA and conferred jurisdiction upon the Davidson County Juvenile Court. We granted review. Whether the juvenile court had jurisdiction is a question of law over which our review is de novo with no presumption of correctness. *See, e.g., Northland Ins. Co. v. State,* 33 S.W.3d 727, 729 (Tenn. 2000).

## ANALYSIS

### I. *Jurisdiction Under UIFSA*

#### A. Continuing Exclusive Jurisdiction and Loss of Jurisdiction of the Issuing State

The Uniform Interstate Family Support Act, Tenn.Code Ann. § 36–5–2201, *et seq.,* controls the establishment, enforcement, or modification of support orders across state lines. UIFSA is intended to "recognize that only one valid support order may be effective at any one time." Unif. Interstate Family Support Act, U.L.A. (1996) (prefatory notes). Key to promoting UIFSA's intent is the concept of "continuing exclusive jurisdiction." A state that issues a support order has continuing exclusive jurisdiction over that order. No other state may modify that order as long as the issuing state has continuing exclusive jurisdiction.

■■■ The issuing state may lose continuing exclusive jurisdiction, however. In this case, the District of Columbia lost continuing exclusive jurisdiction when Mr. LeTellier, Ms. LeTellier, and Nicholas were no longer residents of that state.[1]

1. The District of Columbia is considered a state under UIFSA. Tenn.Code Ann. § 36–5–2101(19).

2. We give substantial deference to the "Comments to Official Text" contained throughout

Tenn.Code Ann. § 36–5–2205(a)(1). The District of Columbia "no longer ha[d] an appropriate nexus with the parties or the child to justify exercise of jurisdiction to modify." Tenn.Code Ann. § 36–5–2205 cmt.[2]

#### B. Section 2611(a): Tennessee's Jurisdiction to Modify Out-of-State Orders

■■■ Section 36–5–2611(a) of UIFSA confers subject matter jurisdiction upon Tennessee courts to modify child support orders issued by other states. It provides:

Modification of child support order of another state—

(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if ... after notice and hearing it finds that:

(1) The following requirements are met:

(i) The child, the individual obligee, and the obligor do not reside in the issuing state;

*(ii) A petitioner who is a nonresident of this state seeks modification;* and

(iii) The respondent is subject to the personal jurisdiction of the tribunal of this state....

Tenn.Code Ann. § 36–5–2611(a) (emphasis added).

Because Ms. LeTellier is a resident of Tennessee, she fails to meet the requirement of § 36–5–2611(a)(1)(ii). Consequently, § 36–5–2611(a) does not confer subject matter jurisdiction upon the Juve-

UIFSA. "The official comments, while not binding, are very persuasive in interpreting the statute to which they apply." *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113, 116 (Tenn.Ct.App.1997).

nile Court of Davidson County to hear Ms. LeTellier's petition to modify the District of Columbia's support order.

### C. Reconciling Section 2611(a) with Section 2202

■ Ms. LeTellier claims, however, that § 36–5–2611(a)(1)(ii) does not preclude the exercise of jurisdiction because § 36–5–2201 and § 36–5–2202 provide the basis for jurisdiction in this case. Because long-arm jurisdiction was obtained over Mr. LeTellier pursuant to § 36–5–2201, § 36–5–2202 became applicable. Section 36–5–2202, Ms. LeTellier argues, expressly precludes any application of § 36–5–2611(a) to this case. Section 36–5–2202 provides as follows:

Procedure when exercising jurisdiction over nonresident—

A tribunal of this state exercising personal jurisdiction over a nonresident under § 36–5–2201 [the long-arm statute] may apply § 36–5–2316 (Special Rules of Evidence and Procedure) to receive evidence from another state, and § 36–5–2318 (Assistance with Discovery) to obtain discovery through a tribunal of another state. *In all other respects, parts 23 through 27 do not apply* and the tribunal shall apply the procedural and substantive law of this state, including the rules on choice of law other than those established by parts 20–29 of this chapter.

(emphasis added).

■ Ms. LeTellier reads the emphasized language of § 36–5–2202 to mean that whenever personal jurisdiction can be asserted over a nonresident pursuant to the long-arm provisions of § 36–5–2201, parts 23 through 27 of UIFSA, including § 36–5–2611, have no application. The court should, therefore, look to the substantive law of Tennessee to determine if subject matter jurisdiction to modify ex-

ists. We do not agree. We hold that § 36–5–2202 applies only to proceedings to establish, enforce, or modify Tennessee support decrees against an out-of-state resident.

### 1. Comments to § 2201 and § 2202: A "One–State–Proceeding"

We find support for this conclusion in the comments to § 36–5–2201 and § 36–5–2202. The comments to § 36–5–2201 and § 36–5–2202 make no reference to subject matter jurisdiction and appear to presume that subject matter jurisdiction exists. For example, the comments to § 36–5–2201 state that a petitioner "has two options: (1) utilize the long-arm statute to obtain personal jurisdiction over the respondent; or (2) initiate a two-state action under the succeeding provisions of UIFSA seeking to establish a support order in the respondent's State of residence." The comments to § 36–5–2202 further describe the one-state proceeding/two-state proceeding dichotomy: "Assertion of long-arm jurisdiction over a nonresident essentially results in a one-state proceeding, notwithstanding the fact that the parties reside in different states."

An effort to establish, enforce, or modify a support decree against an out-of-state resident ordinarily would have an interstate character. Assertion of long-arm personal jurisdiction by a Tennessee court would result in the type of one-state proceeding contemplated by the comments to § 36–5–2201 and § 36–5–2202 only in cases in which the Tennessee court already had subject matter jurisdiction. *See Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn.1994) ("In order to adjudicate a claim, a court must possess both subject matter jurisdiction and personal jurisdiction.").

■ Tennessee courts have subject matter jurisdiction to establish, enforce, or

modify *Tennessee* support decrees. *See, e.g.,* Tenn.Code Ann. § 36–6–101. An action to establish, enforce, or modify a Tennessee order is transformed into a one-state proceeding when long-arm personal jurisdiction over the out-of-state resident is acquired pursuant to § 36–5–2201. Once that is done, the out-of-state resident is no longer out-of-state for purposes of that action, and the action loses its interstate character. The substantive and procedural law of one state, Tennessee, controls pursuant to Tenn.Code Ann. § 36–5–2202. The portion of § 36–5–2202 excluding application of "parts 23 through 27" simply reaffirms the notion that the multistate provisions of UIFSA have no application when only one state is implicated.

Ms. LeTellier alleges that long-arm personal jurisdiction has been satisfied in this case. Even assuming that to be true, the order she sought to modify was issued by a state other than Tennessee. Tennessee courts lack subject matter jurisdiction to modify out-of-state orders when the provisions of UIFSA are not satisfied.[3] Because this case still retains its interstate character, § 36–5–2202 has no application to this case. The remaining provisions of UIFSA, including the subject matter jurisdiction provisions of § 36–5–2611(a), still apply.

### 2. Comments to § 2611: An Analogous Example

Moreover, the comments to § 36–5–2611 refute any contention that asserting personal jurisdiction over an obligor pursuant to § 36–5–2201 is sufficient to confer subject matter jurisdiction to modify an out-of-state decree. The comments also clear-ly establish that an action to modify an out-of-state support order cannot be brought in the petitioner's home state as Ms. LeTellier attempted:

> The policies underlying the change affected by Subsection (a)(1) contemplate that the issuing State has lost continuing, exclusive jurisdiction and that the obligee may seek modification in the obligor's State of residence, or that the obligor may seek a modification in the obligee's State of residence. This restriction attempts to achieve a rough justice between the parties in the majority of cases by preventing a litigant from choosing to seek modification in a local tribunal to the marked disadvantage of the other party. For example, an obligor visiting the children at the residence of the obligee cannot be validly served with citation accompanied by a motion to modify the support order. Even though such personal service of the obligor in the obligee's home State [confers personal jurisdiction], the motion to modify does not fulfill the requirement of being brought by "a [petitioner] who is a non-resident of this State...." In short, the obligee is required to register the existing order and seek modification of that order in a State which has personal jurisdiction over the obligor other than the state of the obligee's residence. Most typically this will be the State of residence of the obligor.

In the above example, modification of the out-of-state order is impermissible in spite of the fact that personal jurisdiction has been acquired over the obligor in a manner authorized by the long-arm provisions of

---

**3.** The Court of Appeals opined that pre-UIFSA case law conferred subject matter jurisdiction on Tennessee courts to modify out-of-state orders. *See Parker v. Parker,* 497 S.W.2d 572 (Tenn.1973). That case law is inapplicable because the legislature has now, through UIF-SA, established specific limits to subject matter jurisdiction to modify out-of-state support decrees. *See* Tenn. Const. art. VI, § 8 (conferring upon the legislature the power to limit the jurisdiction of inferior courts).

§ 36–5–2201. *See* Tenn.Code Ann. § 36–5–2201(1) (providing for personal jurisdiction when an obligor is "personally served with notice within the state").

### D. Resolution under UIFSA

We find that the following official comment to § 36–5–2611 accurately frames the application of UIFSA to this case:

Under UIFSA a tribunal may modify an existing child support order of another state only if certain quite limited conditions are met. First, the tribunal must have all the prerequisites for the exercise of personal jurisdiction required for rendition of an original support order. Second, one of the restricted fact situations described in [§ 36–5–2611](a) must be present.

Even assuming that personal jurisdiction was properly exercised over Mr. LeTellier,[4] Ms. LeTellier has failed to satisfy the "limited conditions" of § 36–5–2611. As a resident of Tennessee, she cannot demonstrate "one of the restricted fact situations described in [§ 36–5–2611](a)." Accordingly, under UIFSA, the Juvenile Court of Davidson County, Tennessee, did not have subject matter jurisdiction to modify the District of Columbia's decree.

### II. *Preemption of UIFSA by the Federal FFCCSOA*

Ms. LeTellier alternatively alleges that the Federal Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B, confers jurisdiction upon the Juvenile Court for Davidson County, Tennessee. FFCCSOA and UIFSA therefore conflict, and FFCCSOA, as federal law, controls. *See, e.g., Riggs v. Burson,* 941 S.W.2d 44, 48 (Tenn.1997) (noting that fed-

eral law controls in a direct conflict with state law).

FFCCSOA provides for modification of out-of-state child support orders as follows:

(e) Authority to modify orders.—A court of a State may modify a child support order issued by a court of another State if—

(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and

(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant. . . .

28 U.S.C. § 1738B(e). Subsection (i), regarding jurisdiction, states as follows:

(i) Registration for modification.—If there is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification.

Subsection (i) differs from UIFSA in that it does not contain the non-resident requirement found at § 36–5–2611(a)(ii). Ms. LeTellier contends that jurisdiction is proper in the Tennessee court under FFCCSOA in spite of her status as a resident of Tennessee because of the doctrine of federal preemption. We again disagree.

▮▮▮ Application of general rules of federal preemption leads us to conclude that FFCCSOA and UIFSA do not con-

---

**4.** Ms. LeTellier has asserted that personal jurisdiction was properly exercised over Mr. LeTellier pursuant to Tenn.Code Ann. § 36–5–2201(2) or (6). Our holding that the Juvenile Court of Davidson County, Tennessee, did not have subject matter jurisdiction renders resolution of the personal jurisdiction issue unnecessary.

flict. We begin with a presumption that Congress did not intend to preempt UIF-SA. *See Riggs*, 941 S.W.2d at 48–49; *Bell-South Telecomm., Inc. v. Greer*, 972 S.W.2d 663, 671 (Tenn.Ct.App.1997). There are several ways in which preemption can occur:

> Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 542 (Tenn.1989) (citations omitted). "The purpose of Congress in enacting a federal law is, therefore, the 'ultimate touchstone' of preemption analysis."

*Riggs*, 941 S.W.2d at 49. FFCCSOA does not contain an express preemption clause. Accordingly, we look to the legislative history of the statute to determine the purpose of enacting FFCCSOA.

In 1988, Congress established the United States Commission on Interstate Child Support ("Commission") to offer recommendations on the resolution of interstate child support problems. As part of its recommendations, the Commission "declared its support for the Uniform Interstate Family Support Act." H.R.Rep. No. 102–982 (1992). FFCCSOA was signed into law in 1994. *See* Pub.L. No. 103–383, § 3(a) (1994) (codified at 28 U.S.C. § 1738B). From its inception, FFCCSOA was intended to be consistent with UIF-SA.[5]

In 1996, Congress enacted a law requiring all fifty states to adopt UIFSA by January 1, 1998. 42 U.S.C. § 666(f) (1996). The necessity of amending FFCCSOA to comply with UIFSA was anticipated.[6] While conflicts between the two laws were recognized, they were characterized as unintentional.[7] Subsequent

---

**5.** *See, e.g.,* H.R.Rep. No. 102–982 (1992) ("[FFCCSOA, as proposed,] is consistent with the recommendations of the Commission and the terms of UIFSA."); H.R. Rep. 103–206 (1993) (same).

**6.** *See, e.g.,* 141 Cong. Rec. S2823–02 (1995) (stating, in summary of Interstate Child Support Responsibility Act of 1995, that "The Full Faith and Credit Act, signed into law last year, which requires every state to respect child support orders from other states, would be modified to follow UIFSA.").

**7.** For example, the Former Chair of the Commission stated:

> In order to achieve a "one order, one time" rule, Congress recently amended [FFCCSOA] to add a section that requires full faith and credit to child support orders, including ongoing and administrative orders, that are based on valid exercises of

jurisdiction. *In defining jurisdiction, the Act attempts to be consistent with the UIF-SA . . . .*
> Unfortunately, as currently enacted, [FFCCSOA] conflicts with UIFSA. It requires recognition of orders that would not be entitled to recognition under UIFSA. There are several other inconsistencies with UIFSA that also need correcting. I urge Congress to make these technical amendments as quickly as possible. States are currently in a great deal of confusion. *The inconsistencies were unintentional,* and can be easily corrected.

*Child Support Enforcement: Before Senate Comm. on Finance,* 1995 WL 133889 (March 28, 1995) (testimony of Margaret Campbell Haynes, Former Chair, U.S. Commission on Interstate Child Support) (emphasis added); *Welfare Revision Child Support: Before House Comm. on Ways and Means,* 1995 WL 45575 (Feb. 6, 1995) (same).

revisions to FFCCSOA were intended to correct any conflicts and make FFCCSOA consistent with UIFSA.[8]

■ Congress clearly did not intend for FFCCSOA to preempt UIFSA. Indeed, it appears that FFCCSOA was intended to follow the contours of UIFSA. There is unsurprisingly no indication in the text of FFCCSOA or its legislative history of any intent to preempt UIFSA. The very fact that Congress mandated that all fifty states adopt UIFSA strongly mitigates against a construction of FFCCSOA that would impliedly preempt UIFSA to any degree. We, therefore, hold that the jurisdictional provisions of FFCCSOA do not preempt the jurisdictional provisions of Tennessee's UIFSA.

■ In the absence of preemption, we apply traditional rules of statutory construction to reconcile both statutes. *See, e.g., BellSouth,* 972 S.W.2d at 671 ("The proper approach is to reconcile the federal and state laws rather than to seek out conflict where none clearly exists." (citation omitted)). "This Court's role in statutory interpretation is to ascertain and to effectuate the legislature's intent." *Freeman v. Marco Transp. Co.,* 27 S.W.3d 909, 911 (Tenn.2000). "In interpreting statutes, we are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose." *State v. Turner,* 913 S.W.2d 158, 160 (Tenn.1995). We are "restricted to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent."

*Halbert v. Shelby County Election Comm'n,* 31 S.W.3d 246, 248 (Tenn.2000).

"A statute is ambiguous if the statute is capable of conveying more than one meaning." *Bryant v. HCA Health Servs. of N. Tenn., Inc.,* 15 S.W.3d 804, 809 (Tenn. 2000). "Once we conclude that the proper interpretation is left open to dispute, it is appropriate to turn to the legislative history of the statute for guidance." *Chapman v. Sullivan County,* 608 S.W.2d 580, 582 (Tenn.1980). "We must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *State v. Turner,* 913 S.W.2d 158, 160 (Tenn.1995).

The word "jurisdiction" as used in FFCCSOA, 28 U.S.C. § 1738B(i), is ambiguous. FFCCSOA does not specify whether "jurisdiction" refers to personal jurisdiction alone or to both personal and subject matter jurisdiction. Nevertheless, the legislative history of FFCCSOA consistently addresses UIFSA and FFCCSOA in tandem and expresses that the statutes were intended to work together without conflict. In light of this legislative history, we find it appropriate to construe the ambiguous jurisdictional provisions of FFCCSOA to be in harmony with UIFSA to the greatest extent possible.

■ A consistent reading of UIFSA and FFCCSOA requires only that "jurisdiction" under subsection (i) of FFCCSOA be construed as referring to both personal jurisdiction and subject matter jurisdiction. *Accord Gentzel v. Williams,* 25 Kan. App.2d 552, 965 P.2d 855, 860–61 (1998). This construction is consistent with the specific jurisdictional provisions of UIFSA and with the intent of FFCCSOA. Ac-

---

**8.** *See* H.R. Conf. Rep. No. 104–725 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2649 (revisions to FFCCSOA proposed "to ensure that full faith and credit laws can be applied consistently with UIFSA"); H.R. Rep. 104–651 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2183 (same); 142 Cong. Rec. H8829–02 (1996) (same); H.R. Conf. Rep. No. 104–430 (1995); *see also* H.R. Rep. 105–78(I) (1997).

cordingly, under FFCCSOA, a state has jurisdiction to modify an out-of-state support order only when the petitioner registers the order in a state having personal and subject matter jurisdiction for the purpose of modification. Since, under § 36–5–2611(a) of UIFSA, Tennessee courts do not have subject matter jurisdiction to modify the District of Columbia's order because Ms. LeTellier is a resident of Tennessee, the Juvenile Court for Davidson County did not have "jurisdiction over the nonmovant for the purpose of modification" under FFCCSOA. *See id.*

## CONCLUSION

We hold that § 36–5–2202 of UIFSA is applicable only when long-arm personal jurisdiction is acquired via § 35–5–2201 over a respondent for purposes of establishing, enforcing, or modifying a support order issued by a Tennessee court. Tennessee courts have subject matter jurisdiction to modify support orders issued by other states only when § 36–5–2611(a) of UIFSA has been satisfied. We further hold that the jurisdictional provisions of the Federal FFCCSOA do not conflict with UIFSA. Accordingly, UIFSA is not preempted by federal law.

Pursuant to UIFSA, the Juvenile Court of Davidson County, Tennessee, did not have subject matter jurisdiction to modify the District of Columbia's order. The judgment of the Court of Appeals is reversed. The trial court's order dismissing the petition to modify the District of Columbia's order is affirmed. Costs of this appeal are taxed to Appellee, Teresa B. LeTellier, for which execution may issue if necessary.